UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Willie E. Burton,

      Plaintiff,

v.                                                              Civil Case No. 20-cv-12182

City of Detroit, *et al.*,                                      Sean F. Cox
                                                                United States District Court Judge

      Defendants.

_____/

## AMENDED OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiff, Willie E. Burton ("Burton"), sued the City of Detroit ("City") and several Detroit Police officials alleging four counts of §1983 claims, three counts of state law tort claims, and one count asking for declaratory action. (Am. Compl. ECF No. 3). The matter currently before the Court is Defendants' Motion for Partial Judgment on the Pleadings brought pursuant to Fed. R. Civ. P. 12(c). For the reasons set forth below, the Court GRANTS Defendants' Motion for Partial Judgment on the Pleadings and dismisses: (1) Burton's claims against Carter, Craig, LeValley, Kyriacou, and Unknown Detroit Police Officer in their official capacities (Counts I – VIII); (2) the due process claim against all Defendants (Count IV); (3) the false arrest claim against the City and Craig in his individual capacity (Count V); (4) the intentional infliction of emotional distress claim against the City and Craig in his individual capacity (Count VI); and (5) the defamation claims against all Defendants (Count VII). The Court also DENIES Defendants' request for sanctions.

1

The remaining claims are as follows: (1) the *Monell* municipal liability claim against the City and LeValley in his individual capacity (Count I); (2) the First Amendment free speech claim against the City, and Kyriacou and LeValley in their individual capacities (Count II); (3) the Fourth Amendment illegal seizure claim against the City, and Kyriacou and LeValley in their individual capacities (Count III); (4) the false arrest claim against Kyriacou and LeValley in their individual capacities (Count V); (5) the intentional infliction of emotional distress claim against Kyriacou and LeValley in their individual capacities (Count VI); and (6) the declaratory action claim against the City, and Kyriacou and LeValley in their individual capacities (Count VIII).

## BACKGROUND

Burton commenced this action on August 13, 2020. (Compl. ECF No. 1). He filed an Amended Complaint on August 28, 2020. (Am. Compl.). As such, that pleading superseded and replaced the original complaint. Discovery has not yet begun.

The Defendants in this case are: the Chief of the Detroit Police, James E. Craig ("Craig"); the Detroit Police Commander of the 10th Precinct, Nick Kyriacou ("Kyriacou"), in his official and individual capacities; the Detroit Police Department Assistant Chief, David LeValley (LeValley), in his official and individual capacities; the Chair of the Board of Police Commissioners, Lisa Carter ("Carter"); and Unknown Detroit Police Officer in his official capacity (collectively "Defendants"). (Compl. ECF No. 1).

In his Amended Complaint, Burton alleged four §1983 claims: one count of *Monell* Municipal Liability (Count I); one count of Violation of First Amendment Right to Free Speech (Count II); one count of Violation of Fourth Amendment Right to be Free from Illegal Seizure (Count III); and one count of Violation of Fifth Amendment Right to Due Process (Count IV).

Burton also alleged three state law tort claims: one count of false arrest (Count V); one count of intentional infliction of emotional distress (Count VI); and one count of defamation (Count VII). Burton also alleged one count for declaratory action (Count VIII). Burton only alleges Count I against the City, Carter, Craig, and LeValley. (Am. Compl. at 13). The other six counts are against all Defendants. (Am. Compl. at 17-24).

As this is a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the following allegations in Burton's Amended Complaint are taken as true.

In 2013, Burton was elected Detroit Police Commissioner for District 5 and has been re-elected every election since. (Am. Compl. at 7).

On July 11, 2019, the Detroit Board of Police Commissioners held a community meeting at the Durfee Information Center. (Am. Compl. at 7). Burton, Carter, Kyriacou, and LeValley attended the meeting as well as approximately 150 private citizens. (Am. Compl. at 7). Approximately, 25 minutes into the meeting, Burton asked Carter what she was going to do differently during her current term as commissioner as opposed to her last term as commissioner. (Am. Compl. at 8). In response, Carter told Burton that his comment was "out of order." (Am. Compl. at 8). Burton then asked Carter what she believed would or should happen when the proposed facial recognition surveillance technology misidentified a person of color who was without the resources to legally defend themselves. (Am. Compl. at 8).

Burton also attempted to call out the Board of Police Commissioners for holding illegal committee meetings that neither he nor the public were allowed to attend and for their unofficial approval of the City of Detroit's use of facial recognition technology. (Am. Compl. at 8). Approximately two minutes after Burton began to speak, Carter instructed the Detroit police

officers who were present at the meeting – including Kyriacou, LeValley, and Unknown Detroit Police Officer – to physically remove Burton from the meeting. (Am. Compl. at 8). LeValley ordered the seizure and arrest of Burton. (Am. Compl. at 10).

Kyriacou and Unknown Detroit Police Officer pulled him out of his chair and dragged Burton to the floor. (Am. Compl. at 8-9). Burton told them, "You do not have permission to touch me." (Am. Compl. at 9). Then, Burton's head struck the floor so hard that two other commissioners that were present later stated they heard the loud impact of the strike. (Am. Compl. at 9).

As this was happening, officers held back protesters, some of whom were wearing masks to show their opposition to facial-recognition technology. (Am. Compl. at 9). At least one protester was arrested at the meeting. (Am. Compl. at 9). Kyriacou and LeValley forced Burton out of the meeting hall in front of civilian onlookers, including many of Burton's constituents. (Am. Compl. at 9). The onlookers requested that they release Burton and began to chant "let my commissioner go" and then "democracy" in protest. (Am. Compl. at 9). Once they had Burton outside, Kyriacou, LeValley, and Unknown Detroit Police Officer blocked the meeting hall exit preventing citizens from continuing to film the events. (Am. Compl. at 9).

Once outside, LeValley gave an order to place Burton under arrest. (Am. Compl. at 10). Burton was placed in two sets of handcuffs and escorted to a police cruiser. (Am. Compl. at 10). While this was taking place, Burton repeatedly asked his arresting officers what he was being charged with and what crime he had violated, but he never received an answer. (Am. Compl. at 10).

Burton is approximately six feet tall and 300 pounds. (Am. Compl. at 10). He was crammed into a small backseat of a police cruiser with his hands handcuffed by two sets of handcuffs behind his back. (Am. Compl. at 10). The cruiser was extremely hot and cramped, and Burton told his arresting officers multiple times that he was having difficulty breathing. (Am. Compl. at 10). Burton was forced to stay in the back of the police cruiser for approximately 40 to 50 minutes before he was taken out at the Detroit Detention Center. (Am. Compl. at 10). At the Detention Center, an officer apparently realized that Burton had become faint and poured water from a jug into Burton's mouth. (Am. Compl. at 10). Detroit Police Commissioner Darryl Brown followed Burton to the Detention Center and entered and paid Burton's bond, so he could be released. (Am. Compl. at 11).

After the incident, Craig made a public statement where he condoned the actions of his police officers in seizing and arresting Burton. (Am. Compl. at 11).

On July 12, 2019, Burton felt extremely unwell and went to the emergency room at Henry Ford Hospital. (Am. Compl. at 11). There, Dr. Phillip Levy diagnosed Burton with a "cerebral concussion" and required Burton to stay for a CT scan and bloodwork. (Am. Compl. at 11). Burton's blood pressure was extremely elevated at the emergency room and the medical staff insisted on keeping him there for hours while they conducted tests to determine the cause. (Am. Compl. at 11). His blood pressure eventually subsided at the emergency room, and it is believed that his elevated blood pressure was a result of the experience the previous night. (Am. Compl. at 11).

On July 14, 2019, Burton again felt extremely unwell and went to the DMC Receiving Emergency Room. (Am. Compl. at 11). He was examined for hours, but then he saw his

5

arresting officers at the hospital, and out of fear and anxiety, he hurriedly left the hospital without allowing the doctors to finish their examination of his injuries. (Am. Compl. at 12).

Burton's cerebral concussion still affects his attention span, his ability to focus, his regulation of mood, and by causing or contributing to his depression and anxiety. (Am. Compl. at 12). As a result of Defendants' actions, Burton suffered severe emotional trauma such that he cannot see or be in the presence of the police, which he is a Commissioner for, without feeling severe anxiety and depression. (Am. Compl. at 12). Burton incurred thousands of dollars in medical expenses as a result of Defendants' actions. (Am. Compl. at 12).

Later, Burton learned from the news that he had been arrested for disorderly conduct and that those charges would not be pursued by Defendants. (Am. Compl. at 12).

Burton believes that Defendants' actions injured his reputation, and it caused him to lose career opportunities. (Am. Compl. at 12). Burton was the Wayne County Field Director for Bernie Sanders' 2016 Democratic Presidential Primary election campaign. (Am. Compl. at 13). Bernie Sanders won the 2016 primary. (Am. Compl. at 13). In August 2019, a month after the video of Burton's arrest had made national news, the Bernie Sanders campaign began hiring for their upcoming Michigan campaign. (Am. Compl. at 13). Despite applying and his previous success in the position in 2016, Burton was not hired by the Bernie Sanders campaign. (Am. Compl. at 13).

## STANDARD OF REVIEW

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). As explained by the Sixth Circuit:

> "[A]ll well-pleaded material allegations of the pleadings of the opposing party
> must be taken as true, and the motion may be granted only if the moving party is

nevertheless clearly entitled to judgment" as a matter of law. *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581–82 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478 (6th Cir. 1973) ). To survive a Rule 12(c) motion, "a complaint must contain direct or inferential allegations respecting all the material elements under some viable legal theory." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007))).

*Hindel v. Husted*, 875 F.3d 344, 346-47 (6th Cir. 2017).

## ANALYSIS

**Duplicative Claims**

Defendants correctly note that, "[a] suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "As long as the governmental entity receives notice and an opportunity to respond, an official-capacity suit 'imposes liability on the entity that he represents.'" *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)). Courts in the Sixth Circuit routinely dismiss duplicative official-capacity claims. *See, e.g.*, *Doe v. Claiborne Cty.*, 103 F.3d 495, 509 (6th Cir. 1996); *Cavanaugh v. McBride*, 33 F. Supp. 3d 840, 848–49 (E.D. Mich. 2014); *Andrews v. Wayne Cty.*, No. 17-11684, 2018 WL 774150, at *6 (E.D. Mich. Feb. 8, 2018); *Welch v. City of Melvindale*, No. 18-11450, 2019 WL 7020744, at *5 (E.D. Mich. Dec. 20, 2019).

Craig, Kyriacou, LeValley, Carter, and Unknown Detroit Police Officer are either officials or employees of the City. (Am. Compl. at 2). The City has clearly received notice of this

7

suit since it is also a named party. Thus, all claims brought against Craig, Kyriacou, LeValley, Carter, and Unknown Detroit Police Officer in their official capacities are duplicative of the claims against the City of Detroit.

Accordingly, the Court dismisses Count I against Craig, LeValley, and Carter in their official capacities. The Court also dismisses Counts II, III, IV, V, VI, VII, and VIII against Craig, Kyriacou, LeValley, Carter, and Unknown Detroit Police Officer in their official capacities.

**Claims Against Craig In His Individual Capacity**

Defendants argue that Burton failed to state plausible §1983 claims against Craig in his individual capacity. (Def's Br. at 6). However, as Burton's brief notes, Burton does not plead claims against Craig in his individual capacity. (Pl's Br. at 5; Am. Compl. at 1). Therefore, Defendant's argument and requested relief is inapplicable.

**Due Process Claim**

"Substantive due process ... serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996) (quoting, in part, *Daniels v. Williams*, 474 U.S. 327, 331, 106 S.Ct. 662, 665 (1986) (internal quotation marks omitted)). Substantive due process claims generally fall under "two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 861 (6th Cir. 2012) (quoting *Valot v. S.E. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997) (internal quotation marks omitted)). In the

present case, Burton asserts that his substantive rights were violated under the second category. (Pl's Br. at 7).

Substantive-due-process challenges usually do not survive if a provision of the Constitution directly addresses the allegedly illegal conduct at issue. *Smith v. Jefferson County Bd. of School Com'rs*, 641 F.3d 197, 217 (6th Cir. 2011). "[T]he Supreme Court has repeatedly cautioned that the concept of substantive due process has no place when a provision of the Constitution directly addresses the type of illegal government conduct alleged by the plaintiff." *Montgomery v. Carter County*, 226 F.3d 758, 769 (6th Cir. 2000). *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (concluding that the reasonableness or unreasonableness of force used by police during an investigatory stop or arrest must be analyzed as a Fourth Amendment claim, rather than under "the more generalized notion of 'substantive due process'").

Burton argues that he "brings a separate Fifth Amendment due process claim for the humiliation and punishment suffered when the police so publicly humiliated Plaintiff arbitrarily, as no charges were ever brought and the police who arrested Plaintiff could not even think of an offense to justify Plaintiff's arrest, during or after his arrest." (Def's Br. at 7). However, Burton's "humiliation and punishment suffered" arise from his arrest, which is constitutionally protected by the Fourth Amendment.

> Substantive due process serves as a vehicle to limit various aspects of potentially oppressive government action. For example, it can serve as a check on legislative enactments thought to infringe on fundamental rights otherwise not explicitly protected by the Bill of Rights; or as a check on official misconduct which infringes on a "fundamental right;" or **as a limitation on official misconduct, which although not infringing on a fundamental right, is so literally "conscience shocking,"** hence oppressive, as to rise to the level of substantive due process violation.

*Howard*, 82 F.3d at 1349 (emphasis added). Defendants' conduct infringes on Burton's fundamental right of free speech and right to be free from illegal seizure, which are protected by the First and Fourth Amendments.

Because the First Amendment and Fourth Amendment provide the explicit source of constitutional protection for his free speech and seizure claims, the Court dismisses Burton's substantive-due-process claim (Count IV).

**Governmental Immunity For Tort Claims**

Defendants argue that governmental immunity applies to Burton's tort claims against the City and Craig (Def's Br. at 10), and Burton agrees with them in his brief (Pl's Br. at 9). In his brief, Burton concedes that the City and Craig should not be considered as Defendants to his tort claims. (Pl's Br. at 9). The only state law tort claims (Counts V-VII) remaining are those against LeValley and Kyriacou in their individual capacities.[1] (Pl's Br. at 9).

**Defamation Claim**

To establish a claim for defamation, Plaintiff must show: (1) a false and defamatory statement concerning the plaintiff, (2) an unprivileged communication to a third party, (3) fault amounting to at least negligence on the part of the publisher, and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by publication. *Steele v. Burek*, No. 14-11969, 2014 WL 6612386 (E.D. Mich. Nov. 20, 2014),

---

[1] Counts V-VII are alleged against "all Defendants." (Am. Compl. at 18-21). The parties agreed that Craig was not listed in his official capacity in their briefs, but they did not mention Carter and Unknown Detroit Police Officer. (Pl's Br. at 5). However, the Amended Complaint also only lists Carter and the Unknown Detroit Police Officer in their official capacities (Am. Compl. at 1), and the claims against them in their official capacities are dismissed as duplicative of those against the City as described above. Therefore, there are no viable claims alleged in the Amended Complaint remaining against Carter and Unknown Detroit Police Officer.

(citing *Thomas M. Cooley Law Sch. v. Doe 1*, 300 Mich. App. 245, 262, 833 N.W.2d 331 (2013). Plaintiff must plead his defamation claim with specificity by identifying the exact language that he alleges to be defamatory. *Id.*

In the Amended Complaint, Burton makes the allegation that "Defendants have accused Plaintiff of being a criminal for speaking at his own Commissioners meeting . . . ." (Am. Compl. at 23). Burton bases this allegation on when Craig "made a public statement[] where he condoned the actions of his police officers in seizing and arresting Plaintiff." (Am. Compl. at 11). Burton argues that condoning the officers' actions logically necessitates that Craig implied that Burton was a criminal. (Pl's Br. at 10). Burton further argues that Craig's statements constituted defamation by implication. (Pl's Br. at 10). However, "[a]s with a traditional defamation claim, a plaintiff in a defamation-by-implication claim must establish material falsity." *Parks v. LaFace Records*, 329 F.3d 437, 462 (6th Cir. 2003).

Contrary to his defamation argument, earlier in his brief, Burton conceded that his state law tort claims against the City and Craig should be dismissed. (Pl's Br. at 9). Defamation is a state law tort claim, and therefore, by Burton's own admission, the defamation claims against the City and Craig should be dismissed. Further, Burton has not pleaded any defamatory statements by any of the other individual defendants. Thus, Burton has not alleged any plausible basis upon which Kyriacou, LeValley, or Carter could be liable for defamation.

For the above reasons, the Court dismisses Burton's defamation claims against all Defendants (Count VII).

11

**Sanctions**

Due to Burton's concessions of the §1983 claims against the defendants in their official capacity and state law tort claims against the City, in their Reply brief, Defendants request costs and fees against Burton as a sanction for unreasonably withholding consent to Defendants' motion for partial judgment on the pleadings. (Reply, ECF No. 7 at 5-6).

Under Local Rule 7.1(a)(3), "the court may tax costs for unreasonable holding of consent." E.D. Mich. LR 7.1(a)(3). "The purpose of Local Rule 7.1(a) is to preclude the incurrence of unnecessary fees, costs and expenses by the party who intends to file the motion where the non-moving party concurs with the relief sought by the party intending to file the motion." *Dupree v. Cranbrook Educ. Cmty.*, No. 10-12094, 2012 WL 1060082, at *13 (E.D. Mich. Mar. 29, 2012). Defendants sought concurrence before filing this motion (ECF No. 5 at PageID 91) and such concurrence was denied.

 Federal courts have the inherent authority to sanction bad-faith conduct, as well as conduct that is "tantamount to bad faith." *Metz v. Unizan Bank*, 655 F.3d 485, 489 (6th Cir. 2011) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991)). Bad faith, in turn, is associated with conduct that is intentional or reckless. See *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008). A party may act in bad faith, for example, if it files a frivolous suit with an improper motive, or if it commits a fraud on the court. *Williamson v. Recovery Ltd. P'ship*, 826 F.3d 297, 301–302 (6th Cir. 2016); see also *Chambers*, 501 U.S. at 45-46 (court may impose sanctions if it finds that "fraud has been practiced upon it, or that the very temple of justice has been defiled").

12

The Sixth Circuit has repeatedly emphasized that the power to impose sanctions "must be exercised with restraint and discretion." *Murray v. Columbus*, 534 Fed. Appx. 479, 484 (6th Cir. 2013); *Stalley v. Methodist Healthcare,* 517 F.3d 911, 920 (6th Cir. 2008). Here, the Court does not find that Burton's actions rise to the level of bad faith conduct required to impose sanctions.

## CONCLUSION

For the reasons explained above, the Court GRANTS Defendants' motion for partial judgment on the pleadings and dismisses: (1) Burton's claims against Carter, Craig, LeValley, Kyriacou, and Unknown Detroit Police Officer in their official capacities (Counts I – VIII); (2) the due process claim against all Defendants (Count IV); (3) the false arrest claim against the City and Craig in his individual capacity (Count V); (4) the intentional infliction of emotional distress claim against the City and Craig in his individual capacity (Count VI); and (5) the defamation claims against all Defendants (Count VII). The Court also DENIES Defendants' request for sanctions.

The remaining claims are as follows: (1) the *Monell* municipal liability claim against the City and LeValley in his individual capacity (Count I); (2) the First Amendment free speech claim against the City, and Kyriacou and LeValley in their individual capacities (Count II); (3) the Fourth Amendment illegal seizure claim against the City, and Kyriacou and LeValley in their individual capacities (Count III); (4) the false arrest claim against Kyriacou and LeValley in their individual capacities (Count V); (5) the intentional infliction of emotional distress claim against Kyriacou and LeValley in their individual capacities (Count VI); and (6) the declaratory action

claim against the City, and Kyriacou and LeValley in their individual capacities (Count VIII).

     IT IS SO ORDERED.

                                      s/Sean F. Cox
                                      Sean F. Cox
                                      United States District Judge

Dated: February 18, 2021

14