UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Willie E. Burton,

    Plaintiff,

v.                                                                              Civil Case No. 20-cv-12182

City of Detroit, *et al.*,                                         Sean F. Cox
                                                                                    United States District Court Judge

    Defendants.
_____/

**OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff, Willie E. Burton ("Burton"), sued the City of Detroit (the "City") and several Detroit Police officials alleging three counts of §1983 claims, two counts of state law tort claims, and one count asking for declaratory action. (ECF No. 24).

The matter currently before the Court is Defendants' Motion for Summary Judgment brought pursuant to FED. R. CIV. P. 56. (ECF No. 30). The motion has been fully briefed and the Court concludes that a hearing is not necessary. Thus, the Court orders that the motion will be decided without a hearing. *See* E.D. Mich. LR 7.1(f). For the reasons set forth below, the Court GRANTS Defendants' motion and DISMISSES this action in its entirety.

**BACKGROUND**

Burton commenced this action on August 13, 2020. (Compl. ECF No. 1). On February 18, 2021, this Court granted Defendants' Partial Motion for Judgment on the Pleadings. (ECF No. 12). In response to this Court's February 18, 2021 Opinion and Order, Burton moved to amend his complaint to reflect the Court's decision. (ECF No. 22) The Court granted that motion (ECF No.

1

23), and Burton filed his Third Amended Complaint (ECF No. 24). As such the pleading superseded and replaced the original complaint. Discovery is scheduled to close on January 21, 2022.

The Defendants in this case are: the City, the Former Detroit Police Commander of the 10th Precinct, Nick Kyriacou ("Kyriacou") in his individual capacity; the Detroit Police Department Assistant Chief, David LeValley (LeValley) in his individual capacity; the Former Chair of the Board of Police Commissioners, Lisa Carter ("Carter") in her individual capacity; and Detroit Police Officer, Aiman Said ("Said") in his individual capacity (collectively "Defendants"). (Compl. ECF No. 1).

In his Third Amended Complaint, Burton alleges three §1983 claims: one count of *Monell* Municipal Liability as to all Defendants (Count I); one count of Violation of First Amendment Right to Free Speech as to all Defendants (Count II); and one count of Violation of Fourth Amendment Right to be Free from Illegal Seizure as to all Defendants (Count III). Burton also alleges two state law tort claims: one count of false arrest as to Carter, Kyriacou, LeValley, and Said (Count IV); and one count of intentional infliction of emotional distress as to Carter Kyriacou, LeValley, and Said (Count V). Burton also alleged one count for declaratory action as to all Defendants (Count VI).

With respect to summary judgment motions, this Court's practice guidelines, included in the Scheduling Order and provide, consistent with Fed. R. Civ. P. 56 (c) that:

> a. The moving party's papers shall include a separate document entitled Statement of Material Facts Not in Dispute. The statement shall list in separately numbered paragraphs concise statements of each undisputed material fact, supported by appropriate citations to the record. . .

2

> b. In response, the opposing party shall file a separate document entitled Counter-Statement of Disputed Facts. The counter-statement shall list in separately numbered paragraphs following the order or the movant's statement, whether each of the facts asserted by the moving party is admitted or denied and shall also be supported by appropriate citations to the record. The Counter-Statement shall also include, in a separate section, a list of each issue of material fact as to which it is contended there is a genuine issue for trial.
>
> c. All material facts as set forth in the Statement of Material Facts Not in Dispute **shall be deemed admitted unless controverted in the Counter-Statement of Disputed Facts.**

(Scheduling Order at 3) (emphasis added).

Defendants complied with the Court's practice guidelines for summary judgment motions to the extent that Defendants filed a "Statement of Material Facts Not In Dispute" ("Def's Stmt") (ECF No. 27).

Burton has not complied with the Court's practice guidelines as he has not filed a Counter-Statement of Material Facts Not In Dispute. Rather, in Burton's response brief, he stated in the Statement Regarding Facts section, "For the most part, the facts relevant to this case are indisputable as they were recorded on video. (See Defendants' traditionally filed video exhibit.)" (ECF No. 32, at PageID 644).

On January 4, 2022, the Court Ordered Burton to: "file a Counter-Statement of Material Facts Not In Dispute no later than 12:00 p.m., on January 10, 2022. **Failure to do so shall result in all material facts set forth in the Statement of Material Facts Not in Dispute filed by the movant being deemed admitted.**" (ECF No. 40, at PageID 697). Burton did not comply with this Order and did not file a Counter-Statement of Material Facts Not in Dispute by the deadline. To date, Burton still has not filed a Counter-Statement of Material Facts.

Therefore, in accordance with the Court's practice guidelines, the following statements in Defendants' Statement of Material Facts Not In Dispute are deemed admitted.

Burton is currently, and was at the time of the incident, a member of the Detroit Board of Police Commissioners ("BOPC"). (Def's Stmt, at PageID 411). During BOPC meetings, individual commissioners must be acknowledged by the chairperson in order to speak. (Def's Stmt, at PageID 411). Further, the chairperson has the ability to call people out of order during a BOPC meeting. (Def's Stmt, at PageID 411). On the date in question, July 11, 2019, Carter was the chairperson of the BOPC. (Def's Stmt, at PageID 411).

Approximately twenty minutes into the meeting, Burton began to speak up while Carter was speaking, and Carter briefly acknowledged Burton. (Def's Stmt, at PageID 411). Carter then ruled Burton out of order because his question did not pertain to the agenda at hand. (Def's Stmt, at PageID 411). After being told he was out of order, Burton continued to speak. (Def's Stmt, at PageID 411).  Carter instructed Burton that if he continued to be out of order, he would be removed from the meeting. (Def's Stmt, at PageID 411). LeValley, who was representing the Detroit Police Department ("DPD") at the meeting, instructed Burton that if he continued to be out of order, DPD would have to take action. (Def's Stmt, at PageID 412). While Burton continued to speak, he was ruled out of order again by Carter. (Def's Stmt, at PageID 412). Burton did not stop speaking after being ruled out of order twice and was ruled out of order for a third time. (Def's Stmt, at PageID 412).

After being ruled out of order three times, Carter asked that Burton be removed. (Def's Stmt, at PageID 412). Carter asked LeValley to have Burton removed from the meeting. (Def's Stmt, at PageID 412). When officers, including Kyriacou and Said, approached Burton, he refused

4

to leave the meeting. (Def's Stmt, at PageID 412). Once Burton was removed from the meeting, he was arrested and escorted to a DPD patrol vehicle. (Def's Stmt, at PageID 412). When Burton was placed in the DPD vehicle, the windows were down. (Def's Stmt, at PageID 412).

## STANDARD OF REVIEW

Summary judgment will be granted where there exists no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue of material fact exists where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The mere existence of a scintilla of evidence in support of the [non-moving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. The Court "must view the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the non-moving party." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002).

Further, "[i]t is an error for the district court to resolve credibility issues against the nonmovant . . . ." *CenTra, Inc. v. Estrin*, 538 F.3d 402, 412 (6th Cir.2008). "In effect, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true . . . ." *Id*. (quoting *Ctr. for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 820 (6th Cir. 2007)).

## ANALYSIS

**I. Qualified Immunity as to Individual Defendants**

Defendants argue that Burton's Fourth Amendment (Count III) and First Amendment (Count II) claims against Kyriacou, LeValley, Carter, and Said should be dismissed because they are entitled to qualified immunity. (ECF No. 30, at PageID 469).

"Qualified immunity is an affirmative defense that shields government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Leonard v. Robinson*, 477 F.3d 347, 354 (6th Cir. 2007).

> Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based upon mixed questions of law and fact."

*Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)).

"[O]fficers are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 138 S.Ct. 577, 585 (2018) (citing *Reichle v. Howards,* 566 U.S. 658, 664, 132 S.Ct. 2088, 182 L.Ed.2d 985 (2012). "Clearly established" means that, "at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing' is unlawful." *Id*. "This demanding standard protects "all but the plainly incompetent or those who knowingly violate the law.'" *Id*. (citing *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

**A. Fourth Amendment Seizure (Count III)**

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." "Because arrests are

6

'seizures' of 'persons,' they must be reasonable under the circumstances." *Wesby*, 138 S.Ct. at 585 (2018). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id*.

The Court "will not grant immunity to a defendant if no reasonably competent peace officer would have found probable cause." *Leonard v. Robinson*, 477 F.3d 347, 355 (6th Cir. 2007). "It is clearly established that arrest without probable cause violates the Fourth Amendment." *Id*. (citing *Klien v. Long*, 275 F.3d 544, 550 (2001)).

Here, there is no question that Burton was arrested by Defendants. Rather the issue is whether Defendants had probable cause to arrest him. If Defendants had probable cause, then they should be protected from this suit by governmental immunity. *Robinson*, 477 F.3d 347

"Probable cause determinations involve an examination of all facts and circumstances within an officer's knowledge at the time of an arrest." *Robinson*, 477 F.3d at 354 (citing *Estate of Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999)). Probable cause "is not a high bar" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 138 S.Ct. at 586.

"Whether an officer is authorized to make an arrest ordinarily depends, in the first instance, on state law." *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979). Here, Defendants argue that there was probable cause that Burton was violating MCL 750.170 (disturbance of lawful meetings) and MCL 750.81(d) (obstructing a police officer).

Under MCL 750.170, "any person who shall make or excite any disturbance or contention in . . . other public meeting where citizens are peaceably and lawfully assembled, shall be guilty of a misdemeanor." As Burton emphasizes in his brief, this statute has been held as overbroad by

7

Michigan courts. *People v. Vandenberg*, 307 Mich. App. 57, 66-67 (2014). Specifically, the *Vandenberg* court held, "the phrase 'exciting a contention' as used in MCL 750.170 is unconstitutionally overbroad insofar as it criminalizes the peaceable public expression of ideas, merely because those ideas may be offensive to others." *Id*. The *Vandenberg* court ordered: "the contention language must be excised from the statute" and "a conviction under MCL 750.170 premised on 'exciting a contention' may not stand." *Id*.

Therefore, only the "contention" language is unconstitutional. A defendant may be convicted if his actions qualify under the "disturbance" language. See *Vandenberg*, 307 Mich. App. at 67 (reasoning that the defendant's conviction must be overturned because "we cannot discern whether defendant was convicted for creating a 'disturbance' or exciting a 'contention.'"). It follows that if Burton's conduct at the BOPC meeting constituted a "disturbance" under the statute then Defendants had probable cause.

Here, as seen in the video (Exhibit 3), Burton interrupted Carter while she was speaking at the BOPC meeting. (Def's Stmt, at PageID 411). Carter briefly acknowledged him. Burton began to speak on a topic unrelated to matter at hand. (Def's Stmt, at PageID 411). Carter ruled Burton out of order, but Burton continued to speak. (Def's Stmt, at PageID 411). Then Carter told Burton that if he continued to be out of order, he would be removed from the meeting. (Def's Stmt, at PageID 411). LeValley also warned Burton that if he continued to be out of order, DPD would have to take action. (Def's Stmt, at PageID 412). Despite these warnings, Burton continued to speak loudly over Carter. (Exhibit 3). As Burton continued to speak, Carter ruled him out of order twice more. (Def's Stmt, at PageID 412). After ruling Burton out of order three times due to this

8

behavior, Carter asked LeValley to remove Burton from the meeting, "so we can have an orderly meeting." (Exhibit 3).

The video shows another commissioner telling the DPD Officers as they approach the table of commissioners that Burton is "out of order." (Exhibit 3). Then DPD Officers, including Kyriacou and Said, approached Burton, but Burton refused to leave the meeting. (Def's Stmt, at PageID 412). Burton continued to yell as the DPD Officers tried to get him to leave the table of commissioners. (Exhibit 3). This attracted several members of the public to get out of their seats and swarm the table of commissioners. (Exhibit 3). The public obstructed the camera's view of Burton, so it is unclear from the video how Burton left the table. (Exhibit 3). But Burton's hands were raised high then sunk below the line of the camera's sight. (Exhibit 3). Once the crowd shifted slightly so that the camera had a better viewpoint, Burton was no longer seated at the table, but appeared to be on the ground with the DPD Officers seemingly trying to lift Burton off the floor. (Exhibit 3). At least ten members of the public had surrounded the table of commissioners several of which had their phones out filming the incident. (Exhibit 3). At this time, Carter announced that they would take a five-minute recess. (Exhibit 3).

Then the video cuts to the swarm of people at the doorway holding their camera's up to try and film something that is happening in the hallway. (Exhibit 3). Members of the public are yelling and generally making a commotion as a commissioner repeatedly directs them to please take a seat because they are calling the meeting back to order. (Exhibit 3).

In another video exhibit (Exhibit 5), Burton is seen loudly talking to DPD Officers in the hallway. (Exhibit 5). Then LeValley informs Burton that he is under arrest and two other DPD Officers place him in handcuffs. (Exhibit 5).

A reasonable officer would find that probable cause exists to arrest Burton for creating a "disturbance" under these circumstances largely because he was ruled out of order three times and refused to leave the meeting when directed by DPD Officers.

Burton directs the Court to *Leonard v. Robinson*, a Sixth Circuit case that held that no reasonable officer would find that probable cause exists to arrest a member of the public who said "god damn" while speaking at a chaired public assembly. *Robinson*, 477 F.3d at 361. Burton argues that the speaker in *Leonard* was "far more disruptive, disorderly, and combative, than anything Plaintiff Burton did at his meeting." (ECF No. 32, at PageID 648). However, the speaker in *Leonard* was never determined to be out of order. In *Leonard*, Sixth Circuit explicitly held:

> We therefore hold that no reasonable officer would find that probable cause exists to arrest a recognized speaker at a chaired public assembly based solely on the content of his speech (albeit vigorous or blasphemous) **unless and until the speaker is determined to be out of order by the individual chairing the assembly**.

*Robinson*, 477 F.3d at 361 (emphasis added).

Here, Burton was ruled out of order three times by Carter. He received several warnings – both from Carter and LeValley – that if he continued to be out of order, he would be removed from the meeting. Burton ignored these warnings. Then when asked to leave the meeting, he refused. It was only after Burton was ruled out of order three times and he refused to leave the meeting that the DPD Officers placed him under arrest for making a disturbance pursuant to MCL 750.170. While "any peace officer in attendance can reasonably be expected to restrain herself from arresting speakers based upon what they say while advocating their political positions in an orderly fashion" *Robinson*, 477 F.3d at 361, this was not the situation LeValley, Kyriacou, Carter, and Said faced: Burton was not speaking nor acting in an orderly fashion and had created a disturbance.

10

Therefore, they had probable cause to arrest Burton and should be granted qualified immunity as to Burton's Fourth Amendment claim.

The Court GRANTS Defendants' motion as to Burton's Fourth Amendment claim and DISMISSES Count III.

**B. First Amendment Retaliation (Count II)**

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). The parties agree that to establish a retaliation claim, a plaintiff must establish:

> (1) that the plaintiff was engaged in a constitutionally protected activity;
>
> (2) that the defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and
>
> (3) that the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Paige v. Coyner*, 614 F.3d 273, 277 (6th Cir. 2010) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

Defendants have conceded that "Burton will likely be able to establish element 1 and 2 because Burton was speaking in public and was subsequently arrested, which would be considered an adverse action." (ECF No. 30, at 16). Therefore, this Court need only examine whether Burton has established the third element.

The Supreme Court has held:

> To prevail on such a claim, a plaintiff must establish a "causal connection" between the government defendant's retaliatory animus" and the plaintiff's "subsequent injury." It is not enough to show that an official acted with a

retaliatory motive and that the plaintiff was injured – the motive must cause the injury. Specifically, it must be a "but-for" cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive.

*Nieves v. Bartlett*, 139 S.Ct. 1715, 1722 (2019) (internal citations removed). Due to the difficulty in determining whether an adverse government action was caused by an officer's malice or the plaintiff's potentially criminal conduct, a showing of "probable cause to make an arrest defeats a claim that the arrest was in retaliation for speech protected by the First Amendment." *Id*. at 1721. The Sixth Circuit has further stated, "[a]s *Nieves* makes clear, if there is a showing of probable cause, a retaliatory arrest claim fails." *Hartman v. Thompson*, 931 F.3d 471, 484 (6th Cir. 2019).

Therefore, as the Court has already held that Kyriacou, LeValley, Carter, and Said had probable cause to arrest Burton above, the Court finds that they are entitled to qualified immunity as to Burton's First Amendment Retaliation claim.

Therefore, the Court GRANTS Defendants' motion as to Burton's Fourth Amendment claim and DISMISSES Count II.

## II. Governmental Immunity

Under Michigan law, the tort liability of governmental employees is governed by the employee provision of the governmental immunity act, which states in pertinent part:

> Each ... employee of a governmental agency ... shall be immune from tort liability for injuries to persons or damages to property caused by the ... employee ... while in the course of employment ... while acting on behalf of a governmental agency if all of the following are met:
>
> (a) The ... employee ... is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.

> (c) The ... employee's ... conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

MCL 691.1407(2).

Here, there is no question that (a) and (b) are met with regards to the DPD Officers in this case. Therefore, the only issue the Court must address is (c): whether the DPD Officers' conduct amounts to gross negligence that is the proximate cause of the injury or damage.

### A. False Arrest (Count IV)

False imprisonment is "an unlawful restraint on a person's liberty or freedom of movement." *Peterson Novelties, Inc. v. Berkley*, 259 Mich. App. 1, 17 (2003). "A false arrest is an illegal or unjustified arrest, and the guilt or innocence of the person is irrelevant." *Id*. To prevail on a claim of false arrest or false imprisonment, "a plaintiff must show that the arrest was not legal, i.e., the arrest was **not based on probable cause**." *Id*. (emphasis added).

Here, since the Court has already concluded that Kyriacou, LeValley, Carter, and Said had probable cause to arrest Burton, they are entitled to governmental immunity under MCL 691.1407(2) for Burton's claim of false arrest.

Therefore, the Court GRANTS Defendants' motion as to Burton's false arrest claim and DISMISSES Count IV.

### B. Intentional Infliction of Emotional Distress (Count V)

Under Michigan law, for a plaintiff to succeed on an intentional infliction of emotional distress ("IIED") claim, she must establish four elements: "(1) 'extreme and outrageous' conduct; (2) intent or recklessness; (3) causation; and (4) 'severe emotional distress.'" *Roberts v. Auto-Owners, Ins. Co.*, 422 Mich. 594, 602 (1985). The Sixth Circuit applying Michigan law has stated,

13

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Mroz v. Lee*, 5 F.3d 1016, 1019 (6th Cir. 1993).

Here, the Court agrees with Defendants that Burton has failed to show that Defendants' conduct rose to the level of "extreme and outrageous." Burton argues that "it is unthinkable that a civilized society would quash a police commissioners free speech while he advocates for his constituents." (ECF No. 32, at PageID 657). However, as established above, Kyriacou, LeValley, Carter, and Said had probable cause to arrest Burton for being held out of order three times at the BOPC meeting and his refusal to leave. This is does not rise to the level of "gross negligence" required to deprive them of governmental immunity under MCL 691.1407(2).

Therefore, the Court GRANTS Defendants' motion as to Burton's IIED claim and DISMISSES Count V.

**III. Governmental Immunity as to the City (Count I)**

"Section 1983 creates a federal cause of action against state or local officials who deprive a person of a federal right while acting under the color of state law. 42 U.S.C. § 1983." *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). "To prevail in a §1983 suit against a municipality, a plaintiff must show that the alleged federal right violation occurred because of a municipal policy or custom." *Id*. (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978)).

There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making

14

authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations." *Id*.

Here, Burton argues that the City should be held liable under the first three routes. First, Burton argues that there was an official agency policy because "Detroit Police Chief Craig made a public statement[] where he condoned the actions of his police officers in seizing and arresting Plaintiff" and therefore, "Detroit's key policy maker in his regard ratified the arrest of Plaintiff, making the City liable under *Monell*." (ECF No. 32, at PageID 655). As an initial matter, neither party directs the Court to any authority to support this assertion of fact. However, even if it is true, the Sixth Circuit has held that "[s]imply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." *City of St. Louis v. Praprotnik*, 486 U.S. 112, 130 (1988).

Second Burton argues that there were actions taken by officials with final decision-making authority because Carter "as an elected official of the City, acted with final decision-making authority as Chair of the Board of Policy Commissioners when she ordered Plaintiff unlawfully removed, which constituted an arrest." (ECF No. 32, at PageID 656). However, just because Carter acted as a City official does not make her decision an official policy for the purposes of *Monell* liability. "[A] government frequently chooses a court of action tailored to a particular situation and not intended to control decisions in later situations." *Pembaur v. City of Cinncinnati*, 475 U.S. 469, 480-481 (1986).

> [N]ot every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion.

15

*Id*. at 482. Here, Burton has not established that by ordering his removal from the meeting Carter has made an official policy. If anything, it appears as though Carter made a singular decision based upon the situation created by Burton's actions, not an official policy decision meant to control later decisions.

Third, Burton argues that there is a policy of inadequate training or supervision because "the police defendants testified that they were utterly devoid of training as to policing parliamentary or chaired meetings." (ECF No. 32, at PageID 656). However, "the inadequacy of police training may serve as the basis for §1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Here, there is no evidence that lack of training specific to parliamentary or chaired meetings has amounts to deliberate indifference to the rights of persons at the meetings.

Burton has not shown that his alleged federal right violation occurred because of a City policy or custom. Therefore, the Court GRANTS Defendants' motion as to the municipal liability claim and DISMISSES Count I.

**IV. Declaratory Judgment Claim (Count VI)**

As the Court is dismissing Counts I-V, it follows the Court shall also dismiss Count VI because it asks the Court to declare that:

> Defendants' actions in seizing and arresting Plaintiff or ordering Plaintiff seized and arrested for exercising his protected free speech, or speaking when he is permitted to speak at a Detroit Board of Police Commissioners meeting, is unconstitutional and violative of Plaintiff's First, Fourth, and Fifth Amendment rights[.]

(ECF No. 24, at PageID 382). In light of the Court's conclusions above that Defendants did not violate Burton's constitutional rights, the Court DISMISSES Count VI.

## CONCLUSION

For the reasons explained above, the Court GRANTS Defendants' motion for summary judgment and DISMISSES this action in its entirety.

IT IS SO ORDERED.

                                                                    s/Sean F. Cox
                                                                    Sean F. Cox
                                                                    United States District Judge

Dated: February 16, 2022